Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Thursday, August 14, 2008 10:25:05 AM

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE: )
 )
DANNY G. MORRELL, JR., and ) Case No. 08-519
RAQUEL L. MORRELL )
 )
    Debtors. ) Chapter 7

## MEMORANDUM OPINION

As authorized by Congress, West Virginia chose not to allow its residents to use the federal bankruptcy exemptions in 11 U.S.C. § 522(d). Instead, West Virginia has created its own scheme of bankruptcy exemptions in W. Va. Code § 38-10-4, which are different from the exemptions available to residents who are not in bankruptcy.

Martin P. Sheehan, the Chapter 7 trustee (the "Trustee") for Danny and Raquel Morrell (the "Debtors"), objects to the Debtors' claim of exemptions under § 38-10-4 on the grounds that West Virginia's bankruptcy only exemption scheme violates the Supremacy Clause of the United States Constitution.[1] For the reasons stated herein, the court will overrule the Trustee's objection.[2]

## I. BACKGROUND

---

[1] The Trustee has not made any constitutional challenge to West Virginia's bankruptcy only exemption statute on grounds of uniformity, equal protection, improper delegation, or privileges and immunities. Likewise, the Trustee does not challenge the constitutionality of § 522(b)'s opt-out provision.

[2] The Trustee objected to the claim of exemptions in 23 separate cases. Pursuant to a case management order, this case was designated as the lead case and all affected parties were allowed to brief the issue. The court's decision here is applicable in all 23 cases, and consistent with this Memorandum Opinion, separate orders will be entered in the individual cases overruling the Trustee's objection.

1

The Debtors value their principal residence at $56,000, and it is subject to a deed of trust securing a note in the approximate amount of $38,000. On Schedule C, the Debtors claim an $18,000 exemption in the property pursuant to W. Va. Code § 38-10-4(a), which allows each Debtor to exempt up to $25,000 in real property that the Debtor uses as a residence. The Trustee argues that the Debtors should be limited to the non-bankruptcy state law homestead exemption in § 38-9-1, which would allow each debtor to claim $5,000 in equity as exempt from their creditors.

If the Debtors are allowed to use West Virginia's bankruptcy only exemption for their residence, then the Trustee will abandon their home and declare that no assets exist to administer in their case. If the Trustee is successful, then the Trustee may elect to sell the Debtors' home and distribute any non-exempt proceeds to the Debtors' pre-petition creditors.

## II. DISCUSSION

The Trustee argues that West Virginia has created a bankruptcy law that conflicts with the federal Bankruptcy Code by creating a scheme of exemptions only available to debtors that have filed a bankruptcy petition. According to the Trustee, Congress has already enacted bankruptcy only exemptions, which are those listed in 11 U.S.C. § 522(d). In the Trustee's view, West Virginia's choice to opt out of the federal exemption scheme is permissible, but creating bankruptcy only exemptions that are different from the exemptions allowed debtors in State court is impermissible.

The Debtors, and the West Virginia Attorney General, contend that West Virginia's bankruptcy only exemptions are authorized by Congress, and, therefore, cannot conflict with federal law. Moreover, they argue, no Supremacy Clause violation has occurred on the basis that West Virginia's bankruptcy only exemptions do not frustrate any federal bankruptcy policy.

To resolve the issue of whether W. Va. Code § 38-10-4 is preempted by the Bankruptcy Code, the court will examine: (A) the extent of concurrent federal and State authority to pass bankruptcy laws and the effect of federal supremacy; (B) the scheme of federal bankruptcy exemptions; (C) the scheme of West Virginia's bankruptcy and non-bankruptcy exemptions; and (D) whether West Virginia's bankruptcy only exemption scheme conflicts with the Bankruptcy Code so as to be preempted under the Supremacy Clause of the United States Constitution.

**A.     Concurrent Authority & the Supremacy Clause**

Article I, Section 8 of the United States Constitution provides that "Congress shall have the Power . . . To establish . . . uniform Laws on the subject of Bankruptcies throughout the United

States . . . ." As explained by the Supreme Court, this power is not exclusive to Congress; individual States also have the power to pass bankruptcy laws:

> [I]t must be recollected that, previous to the formation of the new constitution, we were divided into independent States, united for some purposes, but, in most respects, sovereign. These States could exercise almost every legislative power, and, among others, that of passing bankrupt laws. When the American people created a national legislature, with certain enumerated powers, it was neither necessary nor proper to define the powers retained by the States. These powers proceed, not from the people of America, but from the people of the several States; and remain, after the adoption of the constitution, what they were before, except so far as they may be abridged by that instrument.

*Sturges v. Crowninshield*, 17 U.S. (4 Wheat.) 122, 192-93 (1819).

Thus, "until the power to pass uniform laws on the subject of bankruptcies be exercised by Congress, the States are not forbidden to pass a bankrupt law . . . ." *Id.* at 196. When Congress does pass a bankruptcy law, however, State laws on the same subject are "suspended." *Id.* Of course, a law enacted by Congress is "the supreme Law of the Land, . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2; *see also International Shoe v. Pinkus*, 278 U.S. 261, 265 (1929) (holding that "intolerable inconsistencies and confusion would result" if an Arkansas insolvency law was given effect while the National Bankruptcy Act was in force); *Gibbons v. Odgen*, 22 U.S. (9 Wheat.) 1, 211 (1824). ("[A]cts of the State Legislatures . . . [which] interfere with, or are contrary to the laws of Congress, made in pursuance of the constitution," are invalid under the Supremacy Clause). Only those State laws "which conflict with the bankruptcy laws of Congress . . . are suspended; those which are in aid of the Bankruptcy Act can stand."[3] *Stellwagen v. Clum*, 245 U.S. 605, 615 (1918). Indeed, as stated in *Stellwagen*, "Congress may recognize the laws of State in certain particulars . . . . For example, the Bankruptcy

---

[3] Notwithstanding the clear statement by the Supreme Court in *Sturges* that States have the independent, inherent power to pass bankruptcy laws, the Court of Appeals for the Sixth Circuit has disagreed, calling the decision in *Sturges* one of "administrative necessity" that is contrary to the Constitution. *In re Hood*, 319 F.3d 755, 764-65 (6th Cir. 2003), *aff'd on different grounds*, 541 U.S. 440 (2004). Regardless of the merits of the Sixth Circuit's position on whether States retained bankruptcy power at the time of the Convention, the Supreme Court in *Sturges* plainly stated that the States did retain that power. Quite simply, *Sturges* is "binding precedent until [the Supreme Court] see fit to reconsider [it], regardless of whether subsequent cases have raised doubts about [its] continuing vitality." *Hohn v. United States*, 524 U.S. 236, 253 (1998).

3

Act recognizes and enforces the laws of the Sates affecting dower, exemptions, the validity of mortgages, priorities of payment and the like. Such recognition in the application of state laws does not affect the constitutionality of the Bankruptcy Act. . . ." *Id.* at 613.

Accordingly, in the absence of any federal law on the same subject, a State is free to pass its own bankruptcy laws. Thus, West Virginia has the authority to enact a bankruptcy only statute; the issue is whether West Virginia's bankruptcy only exemption statute conflicts with the Bankruptcy Code.

Determining whether a State's statute is in conflict with a federal bankruptcy law, and thus is invalid under the Supremacy Clause of the United States Constitution is essentially a two step process. *Perez v. Campbell*, 402 U.S. 637, 644 (1971). The court must ascertain "the construction of the two statutes and then determin[e] the constitutional question whether they are in conflict. *Id.*

**B.   The Federal Bankruptcy Exemption Scheme**

Federal bankruptcy law serves two essential purposes. First, as often stated, the purpose of bankruptcy is to give debtors "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934). Second, "[b]ankruptcy law, at its core, is debt-collection law." Thomas H. Jackson, *The Logic and Limits of Bankruptcy Law*, p.3 (Harvard University Press,1986), *reprinted by* Beard Books (2001); *see also Young v. Higbee Co.*, 324 U.S. 204, 210 (1945) ("[H]istorically, one of the prime purposes of the bankruptcy law has been to bring about a ratable distribution among creditors of a bankrupt's assets; to protect the creditors from one another."). Balancing a debtor's right to a fresh start against the rights of the debtor's creditors to collect on pre-petition debts is endemic to bankruptcy law. This tension is perhaps best witnessed in 11 U.S.C. § 522, which helps determine what assets are available for the payment of the debtor's creditors, and what assets a debtor will be able to shield from those creditors to effectuate the debtor's financial fresh start.

In making this determination, all of a Chapter 7 debtor's legal and equitable interests in property become property of the debtor's bankruptcy estate on the filing of the bankruptcy petition. 11 U.S.C. § 541(a)(1). That property is then subject to administration for the benefit of the debtor's creditors by the debtor's Chapter 7 trustee. § 704(a)(1). To ensure the debtor's fresh start, however, § 522(b) of the Bankruptcy Code allows a debtor to exempt certain property from being property of the estate, and, thus, excludes that property from administration by the trustee. 11 U.S.C. §

4

522(b)(1). Sometimes the property exemption is based on value, and sometimes the exemption consists of the property itself, regardless of its value. *E.g.*, § 522(d)(1), (9) (allowing up to $20,200 in equity to be exempted in a homestead, but allowing any home health aid to be exempted regardless of value).

To determine what exemptions are available to a debtor in bankruptcy, Congress allows a debtor to make one of two choices regarding the applicable exemption scheme. The first choice is in § 522(b)(2), which allows debtors to choose from the federal list of exemptions listed in paragraph (d) – unless the debtors' state of residence elects to foreclose that option. The second choice is in § 522(b)(3), which allows debtor to choose from the federal exemptions other than those listed in paragraph (d), and any property that is exempt under State or local law. In the event that a State has opted out of the federal exemptions listed in § 522(d), then the debtor may only use the exemptions listed in § 522(b)(3). Congress's stated reason for allowing States this option is set forth in the 1978 Act's legislative history:

> Under current law, what property is exempt is determined under State law. However, some State exemption laws have not been revised in this century. Most are outmoded, designed from more rural times, and hopelessly inadequate to serve the needs of and provide a fresh start for more urban debtors. . . .
>
> Though exemption laws have been considered within the province of State law under the current Bankruptcy Act, H.R. 8200 adopts the position that there is a Federal interest in seeing that a debtor that goes through bankruptcy comes out with adequate possessions to begin a fresh start. Recognizing, however, the circumstances do vary in different parts of the country, the bill permits the States to set exemption levels appropriate to the locale, and allows debtors to choose between the State exemptions and the Federal exemptions provided in the bill. Thus, the bill continues to recognize the States' interest in regulating credit within the State, but enunciates a bankruptcy policy favoring a fresh start.

*Report of the Committee on the Judiciary, House of Representatives, To Accompany H.R. 8200*, H.R. Rep. No. 95-595, Ch. 3, § II, p. 126, 95th Cong., 1st Sess. (1977).

Section 522(b)'s opt out provision is described as "[a]n eleventh hour compromise between congressional proponents and opponents . . . ." James B. Haines, Jr., *Section 522's Opt-Out Clause: Debtor's Bankruptcy Exemptions in a Sorry State*, 1983 Ariz St. L. J. 1, 4 (1983). The compromise was necessary because the House adopted a version of § 522 that established uniform federal exemptions that a debtor could choose in lieu of available state exemptions. *Id.* at 8. The Senate,

5

however, proposed a version "relegating all debtors to state law exemptions with no minimum (or maximum) federal exemption provision." *Id.*  Because the opt-out provision was negotiated at the eleventh hour, the available legislative history behind the compromise is "scant." *Id.*  Congress never defined the scope of a State's power in opting out of the federal exemptions, and no indication exists that Congress ever considered whether an opt-out State had the power to enact bankruptcy-only exemptions.  Joseph Lamport, *The Preemption of Bankruptcy-Only Exemptions*, 6 Cardozo L. Rev. 583, 598-99 (1984).

Accordingly, § 522(b) is the product of two sets of competing policies.  First, it seeks to strike a balance between a debtor's need for a fresh start and a creditor's need for payment.  Second, it seeks to balance federal and state relations appropriately by establishing a federal exemption scheme aimed at supporting the fresh start / creditor payment balance, but, at the same time, it allows States to opt out of that scheme and substitute each State's own exemption laws so that the competing fresh start and creditor payment policies can be tailored to the needs of each State.

**C.     West Virginia's Exemption Scheme**

West Virginia has two sets of exemptions.  One for debtors in bankruptcy, and one for those who are not in bankruptcy.  The difference in the exemption schemes can be stark.  For example, W. Va. Code § 38-10-4(a), allows a single debtor to exempt up to $25,000 in real property that the debtor uses as a residence.  In contrast, outside of bankruptcy, a single debtor is limited to a $5,000 homestead exemption under § 38-9-1.[4]

The West Virginia bankruptcy exemption statute was enacted in 1981 in response to Congress's invitation to the States in the 1978 Bankruptcy Code to opt out of the federal bankruptcy exemptions listed in 11 U.S.C. § 522(d).  Unfortunately, very little documentation of the legislative process leading to the enactment of W. Va. Code § 38-10-4 exists.  The legislative history consists of Journal notes from the House of Delegates that reflect the bill (Com. Sub. For H.B. 849) being

---

[4] Other differences are more minor. *Cf.* W. Va. Code § 38-8-1(1) (allowing a non-bankrupt debtor to claim up to a $5,000 exemption in one motor vehicle, so long as the total personal property exemptions do not exceed $15,000), *with* § 38-10-4(b) (allowing a bankrupt debtor to exempt $2,400 in one motor vehicle, plus any unused amount of the $25,000 homestead exemption). *See, e.g.*, Julia A. Chincheck, *The Effects of West Virginia's Bankruptcy Exemption Statute on Resident Debtors*, 86 W. Va. L. Rev. 227, 245-47 (1983) (explaining the differences in the two exemption schemes).

read three times before its passage, and then a further agreement by the House of Delegates to incorporate minor amendments made by the Senate before it was presented to the Governor for signature. No detailed committee or conference committee reports were created. While committee hearings and floor debates are audio taped, no such tapes currently exist regarding the enactment of W. Va. Code § 38-10-4 in 1981. In short, after examining § 38-10-4's legislative history, no explicit indication exists as to why West Virginia chose to enact bankruptcy only exemptions rather than afford debtors in bankruptcy the same exemptions used by non-bankruptcy debtors in State court.

The absence of explicit legislative statements regarding the creation of West Virginia's bankruptcy only exemption statute, however, does not mean that the purpose of the enactment cannot be pieced together. Congress had already articulated a federal interest in seeing that a debtor that goes through bankruptcy comes out with adequate possessions to begin a fresh start. Also, the stated purpose of allowing States to opt out of the federal exemptions in § 522(d) was that circumstances vary in different parts of the country, and the individual States are best suited to set the exemption levels that are appropriate to the locale.

Apparently, the West Virginia legislature did not believe that its non-bankruptcy exemption scheme was adequate to fulfill the fresh start objectives of federal bankruptcy law. Indeed, the object of West Virginia's non-bankruptcy exemption laws is "for the protection and benefit of a poor debtor and his helpless family, to give them the bread of life and a pillow whereon to lay the head, to save them from destruction and absolute want." *State ex rel. Burt v. Allen*, 48 W. Va. 154, 162-63, 35 S.E. 990, 993 (1900). Thus, the goal of West Virginia's non-bankruptcy exemption laws is to prevent destitution. In contrast, bankruptcy exemptions aim to do more than prevent impoverishment. Bankruptcy exemptions serve to set aside enough property for the debtor to enjoy "a new opportunity in life and a clear field for future effort. . . ." *Hunt*, 292 U.S. at 244. At the same time, West Virginia apparently did not believe that the federal exemptions listed in 11 U.S.C. § 522(d) were best suited to strike the fresh start / creditor payment balance for its residents. W. Va. Code § 38-10-4 ("[T]his state specifically does not authorize debtors who are domiciled in this state to exempt the property specified under the provisions of 11 U.S.C. § 522(d).").

More specifically, a review of W. Va. Code § 38-10-4 and 11 U.S.C. § 522(d), as they existed in 1981, reveals only two differences. First the term "aggregate" in §522(d), as used in several places to describe the "debtor's interest" does not appear in original § 38-10-4. Second, § 522(d)(3)

7

provided that an unlimited amount of household goods could be exempted, but no particular item of household goods could be worth more than $200.00. In contrast, § 38-10-4(c) only permitted a total of $1000.00 of household goods to be exempted while keeping the limitation of $200.00 for a single item. Thus, it can be safely said that West Virginia originally elected to opt out of the federal exemptions because it wanted to put a cap on the amount of household goods that could be exempted by West Virginians filing bankruptcy. Since that time, however, West Virginia has added additional exemptions, and, as applicable here, increased a single debtor's homestead exemption to $25,000, which is in excess of the $20,200 currently allowed under § 522(d).

Accordingly, it is most likely that West Virginia chose to create bankruptcy only exemptions because it desired – as directed by § 522(b)'s legislative history – to tailor its bankruptcy exemption laws to a level that is appropriate for the residents of West Virginia to achieve the fresh start objectives of the Bankruptcy Code. *See* Julia A. Chincheck, *The Effects of West Virginia's Bankruptcy Exemption Statute on Resident Debtors*, 86 W. Va. L. Rev. 227, 248 (1983) ("[T]he West Virginia Legislature appears to have created a classification which is not 'wholly irrelevant' to the objective of providing a 'fresh start.'").

**D.    Preemption**

With an understanding of the federal and West Virginia exemption schemes, the next step is to determine if the West Virginia exemption scheme conflicts with federal bankruptcy law and is therefore preempted.

Federal preemption is generally stated to entail three inquiries. As stated by the Court in *Pennsylvania v. Nelson*, 350 U.S. 497, 502 (1956), the first inquiry is whether "'the scheme of federal regulation [is] so pervasive as to make reasonable inference that Congress left no room for the States to supplement it.'" The second is whether the statute "'touches a field in which the federal interest is so dominant that the federal system [must] be assumed to preclude enforcement of state laws on the same subject.'" *Id.* at 504. Third, the court must determine whether the enforcement of a state statute "presents a serious danger of conflict with the administration of the federal program." *Id.* at 505. In considering the validity of state laws touching the same subject as the federal law, the court "has made use of the following expressions: conflicting; contrary to; occupying the field; repugnance; difference; irreconcilability; inconsistency; violation; curtailment; and interference." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941); *see also Nat'l City Bank v. Turnbaugh*, 463 F.3d 325,

8

330 (4th Cir. 2006) ("Preemption 'is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.'") (citation omitted), *cert. denied*, 127 S. Ct. 2096 (2007). In sum, "States may not pass or enforce laws to interfere with or complement the Bankruptcy Act, or to provide additional or auxiliary regulations." *Pinkus*, 278 U.S. at 265-66. At the same time, those State laws "which are in aid of the Bankruptcy Act can stand." *Stellwagen*, 245 U.S. at 615.

In this case, the first and second inquiries are inapplicable for the reason that Congress expressly chose to allow a State to refuse the application of the federal bankruptcy exemptions listed in 11 U.S.C. § 522(d), and in lieu thereof, use the exemptions provided by State and local law. *E.g.*, *Kulp v. Zeman (In re Kulp)*, 949 F.2d 1106, 1109 n.3 (10th Cir. 1991) ("[W]e have no conflict because 11 U.S.C. § 522 expressly delegates to States the power to create bankruptcy exemptions."); *Rhodes v. Stewart*, 705 F.2d 159 (6th Cir. 1983) ("It is . . . axiomatic that Congress has not preempted an area wherein it has legislated when it expressly and concurrently authorizes the state legislature to disregard or opt-out of such federal legislative area."). Thus, West Virginia's bankruptcy only exemption law may only be preempted by federal law if it has exceeded the boundaries of the opt out provision, and thereby presents a serious danger of conflict with the Bankruptcy Code.

In passing on whether a State statue is permissible under the federal Constitution, "every reasonable presumption must be indulged in favor of the validity of such enactment." *Sweet v. Rechel*, 159 U.S. 380, 392-93 (1895). A state statute "must be regarded as valid, unless it can be clearly shown to be in conflict with the constitution." *Id.* at 393; *see also Oakland Club v. South Carolina Public Service Authority*, 110 F.2d 84, 88 (4th Cir. 1940) ("Ordinarily there is a strong presumption in favor of the constitutionality of the legislative enactment. . . . And a finding [of invalidity] is indicated only in a very clear case. Every reasonable intendment is presumed against such a course of action."). Because this case involves an objection to an exemption filed by the Chapter 7 trustee, the burden to prove the objection rests with the trustee. Fed. R. Bankr. P. 4003(c).

In addressing whether bankruptcy only State law exemptions schemes are constitutional, the available authority is split.[5] This court, however, believes that West Virginia's bankruptcy only

---

[5] Some courts have held bankruptcy only exemptions unconstitutional. *E.g.*, *In re Regevig*, No. 08-2547, 2008 Bankr. LEXIS 1930 at *11 (Bankr. D. Ariz. June 24, 2008) ("There is simply no room for states to adopt their own bankruptcy-specific exemptions by a procedure

9

other than that provided by the Code, *i.e.*, not opting out of the Bankruptcy Code's exemptions."); *In re Wallace*, 347 B.R. 626, 635 (Bankr. W.D. Mich. 2006) ("What Congress cannot do under the Constitution is to delegate to . . . the states . . . the power to actually decide what is to be the appropriate [bankruptcy only exemption] scheme."); *In re Cross*, 255 B.R. 25, 35 (Bankr. N.D. Ind. 2000) ("[S]tates may not create exemptions that apply only to bankruptcy proceedings. Doing so frustrates the full operation of federal law by challenging the balance Congress struck which allocates the consequences of bankruptcy between debtors and creditors."); *In re Mata*, 115 B.R. 288, 291 (Bankr. D. Colo. 1990) ("While it is constitutionally permissible for Congress to permit state exemptions to apply in bankruptcy, it is not permissible for states to seek to enact two different levels of exemptions, one applicable in bankruptcy and one without."); *In re Lennen*, 71 B.R. 80, 83 (Bankr. N.D. Cal. 1987) ("[T]he statutory wording of section 522(b)(2)(A) that the debtor may claim property as exempt under 'State or local law that is applicable' should not, in view of constitutional considerations, be interpreted so liberally as to authorize a state exemption scheme which is applicable only in federal bankruptcy court."); *In re Reynolds*, 24 B.R. 344, (Bankr. S.D. Ohio 1982) ("When a state endeavors to adopt exemptions applicable only in the bankruptcy court, it then invades an area of law reserved to the federal government, as preempted by the United States Constitution and statutes enacted pursuant thereto. . . . [States] cannot . . . adopt provisions peculiar to and applicable only under federal bankruptcy law."); *see also In re Kanter*, 505 F.2d 228 (9th Cir. 1974) (holding a California statute unconstitutional that would prohibit a trustee in bankruptcy from acquiring an interest in a debtor's personal injury action while judgment creditors could obtain a lien on the cause of action outside of bankruptcy); Joseph Lamport, Note, *The Preemption of Bankruptcy-Only Exemptions*, 6 Cardozo L. Rev. 583, 586 (1984-85) ("[T]he federal government has occupied the field of bankruptcy legislation and, therefore, state-enacted bankruptcy-only exemptions are preempted even though they may not be in actual conflict with specific provisions of the Bankruptcy Code.")

Other courts have held that bankruptcy only exemptions are constitutionally acceptable. *E.g.*, *Kulp v. Zeman (In re Kulp)*, 949 F.2d 1106, 1109 n.3 (10th Cir. 1991) ("[S]tates may pass laws which do not conflict with the federal scheme. In this case we have no conflict [with Colorado's bankruptcy only exemption] because 11 U.S.C. § 522 expressly delegates to states the power to create bankruptcy exemptions."); *In re Brown*, No. 06-30199, 2007 Bankr. LEXIS 2486 at *46 (Bankr. N.D.N.Y. July 23, 2007) (holding that Congress specifically allowed States to use their own exemptions instead of the federal exemptions listed in § 522(d), and New York's bankruptcy only exemption scheme is not so inconsistent with the exemptions listed in § 522(d) as to render it invalid under the Supremacy Clause); *In re Shumaker*, 124 B.R. 820, 826 (Bankr. D. Mont. 1991) ("[T]he underlying premise of *Mata* and *Lennen* that it is not permissible for states to seek to enact two different levels of exemptions, one applicable in bankruptcy and one without, simply misstates the applicable constitutional power of a state to enact bankruptcy laws where Congress has not sought to act."); *In re Vasko*, 6 B.R. 317, 323-24 (Bankr. N.D. Ohio 1980) (concluding that the State's bankruptcy only exemption law did not conflict with, or frustrate the basic objectives of Congress to provide a debtor with a fresh start and was therefore not preempted); William J. Woodward, *Exemptions, Opting Out, and Bankruptcy Reform*, 43 Ohio St. L. J.335, 363-64 (1982) (stating that "it is difficult to assess definitively congressional

10

exemption statute is not preempted by the Bankruptcy Code on four grounds: (1) West Virginia has the inherent power to enact bankruptcy laws; (2) the enactment of a bankruptcy only exemption statute is not precluded by § 522(b)'s opt out provision; rather, a bankruptcy only exemption statute is perhaps the best method of harmonizing existing state exemption laws with the fresh start objectives of bankruptcy; (3) while States are prohibited from allocating the consequences of bankruptcy between a debtor and a creditor, exemption laws are unique in that Congress has specifically recognized the non-preemption of a State's exemption statutes; and (4) the limits of West Virginia's bankruptcy only exemptions do not frustrate any Congressional policy for allowing exemptions in bankruptcy.

### 1. Inherent Power to Pass Bankruptcy Laws

One of the reasons some courts have determined that a bankruptcy only exemption law is unconstitutional is that "the authority to enact bankruptcy laws is only one of two powers granted to Congress under the Constitution whereby Congress is directed by the States to enact uniform laws." *In re Wallace*, 347 B.R. 626, 631 (Bankr. W.D. Mich. 2006). In the view of the *Wallace* court, "the Bankruptcy Clause is intended to encompass the entire 'subject of Bankruptcies,' including the subject of exemptions, and if . . . the grant of that power is exclusive, then Congress cannot . . . redelegate to the States the authority to create such exemptions . . . ." *Id.* at 633.

As explained, supra, in Part (A), the Supreme Court of the United States has determined that States retain the power to pass bankruptcy laws and those laws are valid unless they conflict with a law of the United States. *Sturges*, 17 U.S. at 192-93. This court is bound by that decision, and, therefore, does not view West Virginia's enactment of a bankruptcy only exemption law as being an exercise of power delegated to it by Congress. West Virginia is legislating within its own sovereign authority with the acquiescence of Congress.

### 2. The Opt-Out Provision Encourages State Legislation

As reflected in the 1978 Act's legislative history, State law exemptions were generally regarded as being "outmoded, designed for more rural times, and hopelessly inadequate to serve the needs of and provide a fresh start to more urban debtors." *Report of the Committee on the Judiciary,*

---

intent" on whether "the states are without authority to do anything other than opt out," but "[a]valiable evidence suggests . . . that the Code includes at least limited authority to develop exemptions specifically for state debtors in bankruptcy.").

11

*House of Representatives, To Accompany H.R. 8200*, H.R. Rep. No. 95-595, Ch. 3, § II, p. 126, 95th Cong., 1st Sess. (1977). Likewise, the opt-out provision was designed to both "permit the States to set exemption levels appropriate to the locale, and . . . to recognize the States' interest in regulating credit within the State," while, at the same time, "enunciat[ing] a bankruptcy policy favoring a fresh start." *Id.* West Virginia's non-bankruptcy homestead exemption, W. Va. Code § 38-9-1, may have been exactly the type of exemption law that Congress believed was outmoded and insufficient to afford a debtor a fresh start after bankruptcy. At its creation in 1864, it allowed a debtor to protect $1,000 of the debtor's homestead from creditors, by the time of its last amendment in 1974, that amount was only $5,000. Moreover, as stated *supra*, Part C, West Virginia's non-bankruptcy exemption laws are designed to prevent destitution, which is a different goal than providing a debtor with the fresh start that Congress desired to effectuate.

In fact, viewing the legislative history of 11 U.S.C. § 522(b)'s opt-out provision, a stronger case can be made for Congress's authorization for a State to create bankruptcy only exemptions than for Congress's purported attempt to constrict State law bankruptcy exemptions to those generally available to all residents of a State. The opt-out provision itself does not limit a State's authority to enact bankruptcy only exemptions, and bankruptcy only exemptions are consistent with ideals of federalism:

> Moreover, it appears that the opt-out compromise was perceived as a states' rights victory. Rather than allowing the source of bankruptcy exemptions to be changed to the federal government for the first time in recent history, the opt-out provision preserved for states the option of maintaining a measure of authority over that component of the bankruptcy process, as they had under the old Act. It seems more consistent with a states' rights purpose and with notions of federalism that Congress permitted states maximum flexibility to specify "State or local law" for purposes of bankruptcy independently of the exemption provisions otherwise applicable within their states.

William J. Woodward, *Exemptions, Opting Out, and Bankruptcy Reform*, 43 Ohio St. L.J. 335, 364 (1982).[6]

---

[6] *Contra*, *In re Regevig*, No. 08-2547, 2008 Bankr. LEXIS 1930 at *11 (Bankr. D. Ariz. June 24, 2008) ("Congress has pervasively defined the exemptions that a state may permit a debtor to claim only in a bankruptcy case, even if they are not generally exempt from creditors outside of bankruptcy . . . . Where Congress has already defined both the substantive law and procedure, in a pervasive federal scheme that generally pre-empts state legislation, Congress has

12

Indeed, the Bankruptcy Code provides that when a State opts out of the federal exemptions in 11 U.S.C. § 522(d), the exemptions available to a debtor are for property "that is exempt under Federal law, other than subsection (d) of this section, or *State or local law* that is applicable on the date of the filing of the petition." § 522(b)(3)(A) (emphasis added). Importantly, Congress defined exemptions with reference to "State of local law" – it did not use the well established term "applicable non-bankruptcy law," which appears 32 times in the Bankruptcy Code. (Attorney General's Br., p. 16). Thus, by its plain language, § 522(b)(3) implicitly permits a State's bankruptcy law to be the "State or local law" by which an exemption can be claimed.

In sum, West Virginia appears to have admirably fulfilled its federal mandate in opting out of the federal exemptions in 11 U.S.C. § 522(d). It created a set of bankruptcy exemptions that, in the view of the Legislature: (1) are tailored to the needs of West Virginia residents, (2) appropriately regulate credit within the State, and (3) fulfill the fresh start objectives of the Bankruptcy Code by seeking to afford debtors in bankruptcy enough property to not only avoid destitution, but to gain "a new opportunity in life and a clear field for future effort . . . ." *Hunt*, 292 U.S. at 244.

### 3.     **Allocating the Consequences of Bankruptcy**

In holding Indiana's bankruptcy only exemption statute unconstitutional, the court in the case of *In re Cross*, 255 B.R. 25, 36 (Bankr. N.D. Ind. 2000), held that Indiana's attempt to define what property a debtor may exempt in bankruptcy was an attempt to "control[] the distribution of assets between debtors and creditors and, thus, how the consequences of bankruptcy are allocated between them." *Id.* at 34. By creating a bankruptcy only exemption, Indiana frustrated "the full operation of federal law . . . ." *Id.* at 35. While Indiana's statute may have furthered the federal policy of affording a debtor in bankruptcy a fresh start, it frustrated the other purpose of bankruptcy law, which is to repay creditors. *Id.* at 35-36. In *Cross's* view, a State's attempt to allocate the consequences of bankruptcy by setting bankruptcy exemption laws is just as evil as a State's attempt to control: (a) what debts are dischargeable, (b) the value of a bankruptcy discharge, (c) the manner in which the assets of the estate are distributed, and (d) attempting to prohibit the trustee from administering assets available to creditors outside of bankruptcy. *Id.* at 33.

---

occupied the field. There is simply no room for states to adopt their own bankruptcy-specific exemptions by a procedure other than that provided by the Code . . . .").

13

In a similar vein, the Trustee contends that the legislative history of the 1978 Bankruptcy Code supports *Cross's* view that a State cannot create property rights based on the filing of a bankruptcy petition:

> Bankruptcy policy strongly favors equality of treatment of all creditors, and strongly disfavors the creation of property rights upon the filing of a bankruptcy case. The purpose of bankruptcy is to enforce rights that have arisen before bankruptcy, and to enforce them in an orderly liquidation process. Springing interests unfairly defeat legitimate expectations of other creditors who may have relied on the absence of any such prior interests in extending credit. Section 67 of the present Bankruptcy Act and section 545 of proposed title 11 of the United States Code implement this important bankruptcy policy.

*Report of the Committee on the Judiciary, House of Representatives, To Accompany H.R. 8200*, H.R. Rep. No. 95-595, 95th Cong., 1st Sess. (1977)

This court cannot agree with *Cross's* analysis, or the Trustee's assertion that the 1978 Bankruptcy Code's legislative history sought to prohibit a State from enacting a bankruptcy only exemption law. Importantly, a State's attempt to control what debts are dischargeable, the value of the bankruptcy discharge, the manner of distribution, and the extent of property of the bankruptcy estate all conflict with express provisions of the Bankruptcy Code. *See* 11 U.S.C. §§ 523(a), 524(a), 541, 726. Unlike § 522(b), Congress has not indicated any willingness to allow States to create the operable rules for these areas of bankruptcy law. Indeed, § 545 furthers the Congressional policy of prohibiting States from dictating the consequences of a federal bankruptcy proceeding by expressly allowing a trustee to avoid the fixing of a statutory lien on property of the debtor that is triggered by the filing of a bankruptcy petition.

The distinction between § 522(b)'s opt out provision and the mandatory nature of other Bankruptcy Code provisions that prohibit a State from controlling the consequences of a bankruptcy proceeding is an important one. And in this court's view, one that was not afforded is proper weight in *Cross's* analysis. A distinct difference exists between creating a bankruptcy only exemption law and attempting to control the course and scope of a federal bankruptcy proceeding. A State's bankruptcy only exemption law (to the extent that it is not too inconsistent with federal bankruptcy objectives) is not the type of State law that results in unequal treatment of creditors, or a "springing interest" that defeats creditor expectations. Moreover, the legislative history cited by the Trustee concerns the avoidance of statutory liens under § 545, and the court is disinclined to use the

14

legislative history of that section to interpret § 522(b), which already has its own legislative history.

In sum, by enacting its bankruptcy only exemption law, West Virginia is not seeking to allocate the consequences of bankruptcy; rather, it is, pursuant to its Congressional directive, setting aside that portion of the debtor's property, appropriate to the locale, sufficient enough to effectuate the debtor's fresh start, and to protect the local credit market. The effect that bankruptcy only exemptions laws have on other sections of the Bankruptcy Code is incidental and not constitutionally infirm.

### 4. Frustrating the Purpose of the Bankruptcy Code

Given the objectives of Congress in creating the opt-out provision of 11 U.S.C. § 522(b) – to provide the debtor with a fresh start and to regulate credit consonant with the needs of the locale – the court must determine if West Virginia's bankruptcy only exemption statute frustrates this purpose.

Of course, Congress chose to balance the fresh start needs of a debtor and the collection needs of the credit industry in § 522(d). West Virginia's bankruptcy exemptions are different from those listed in that subsection. With regard to the use of a State's general, non-bankruptcy exemptions laws, the Bankruptcy Code "does not require those states that have opted out of the federal exemptions to provide exemptions comparable, concomitant, or corresponding to the federal exemptions." *Clark v. Chicago Mun. Emples. Credit Union*, 119 F.3d 540, 544 (7th Cir. 1997). Because Congress has already defined the scope of bankruptcy only exemptions in § 522(d), however, it is important that a State's bankruptcy only exemption law not frustrate the purposes and policies embodied in the federal determination of the appropriate balance between a debtor's right to a fresh start and a creditor's right to repayment. *See, e.g.*, Woodward, 43 Ohio St. L.J. at 368 ("[F]ormulating exemptions for bankruptcy purposes . . . must fit and operate with a much larger federal statute. . . . which has reasonably well defined goals and objectives set by Congress. . . . [A] state risks the undoing of its opt out legislation if that legislation is perceived as thwarting federal objectives.").

Here, West Virginia allows a single debtor to exempt up to $25,000 in equity in the debtor's homestead, and any unused portion of that amount can be used to exempt other property of the debtor. W. Va. Code § 38-10-4(a), (e). By comparison, the federal exemptions in 11 U.S.C. § 522(d) allow a single debtor to exempt $20,200 in equity in the debtor's homestead, and up to

15

$10,125 of that amount can be used to exempt other property of the debtor. Likewise the federal motor vehicle exemption is currently $3,225, § 522(d)(2), and the West Virginia motor vehicle exemption is $2,400. W. Va. Code § 38-10-4(b). The differences between the two statutes are not so great as to call into question whether West Virginia's bankruptcy exemptions frustrates a federal bankruptcy policy.[7] *Accord*, *In re Brown*, No. 06-30199, 2007 Bankr. LEXIS 2486 at * (Bankr. N.D.N.Y. July 23, 2007) (holding that the differences between New York's bankruptcy only exemption law and the federal exemptions listed in § 522(d) did "not appear to 'obstruct the basic objectives of federal law.'").

In sum, the court cannot find that West Virginia's bankruptcy only exemption law frustrates federal law, and, consequently, W. Va. Code § 38-10-4 is not preempted under the Supremacy Clause of the United States Constitution.

### III. CONCLUSION

The court will deny the Trustee's objection to the Debtors' claim of exemptions. A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.

---

[7] A fuller examination of the federal and West Virginia exemption schemes, as they relate to the Trustee's filed objections in the 23 cases consolidate by the court for purpose of briefing the Trustee's objection, show only minor differences. Those differences are no cause of concern.